NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ZHANG XINGQUAN,<br><br>           Petitioner,<br><br>    v.<br><br>ERIC HOLDER, JR. et al,<br><br>           Respondents. | : : : : : : : : : : : | Civil Action No. 12-7650 (MAS)<br><br>**OPINION** |

**Shipp**, District Judge:

This matter comes before the Court upon Petitioner's filing of a habeas application, pursuant to Section 2241. (Pet. ECF No. 1.) For the reasons expressed below, the Petition will be dismissed without prejudice.

### I. Background

Petitioner is an alien detainee seeking release from confinement. (Pet. 3-5.) Unfortunately, his Petition presents a pre-printed boilerplate form containing very limited information as to his own circumstances. *See, e.g., id.* at 5 (utilizing, without filling, the "[Insert Date]" prompt of that boilerplate form and leaving the Court to guess his facts).[1]

As drafted, the Petition offers this Court only five pieces of factual information: (1) Petitioner is a native and citizen of China; (2) more than a dozen years ago, on October 24, 2000, Petitioner entered the United States by means of a certain limited-time

---

[1] "Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "*facts* supporting each of the grounds thus specified." 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004, applicable to § 2241 petitions through Habeas Rule 1(b)) (emphasis supplied).

visa that long expired; (3) during his stay in the United States, Petitioner had an unspecified criminal conviction that resulted in a prison term; (4) Petitioner was paroled from that penal confinement into the ICE custody either on October 26, 2012, or November 6, 2012; and (5) he has become subject to a final order of removal entered on an unspecified date. (Pet. 2, 3.) Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), he maintains that he should be released from his civil confinement because there is no significant likelihood of removal to China in the reasonably foreseeable future. (Pet. 3-5.)

II.     Discussion

   A.     **Governing Legal Framework**

The information provided in the Petition indicates that Petitioner is a "removal-period" detainee. The term "removal period" is a term of art ensuing from the language of Section 1231(a)(1)(A), which provides that the government has a 90-day "removal period" to deport an alien ordered removed from the United States. Detention during that "removal period" is mandatory, and § 1231(a) also provides that this "removal period" shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal [ensuing from his/her] order of removal." 8 U.S.C. § 1231(a)(1)(C).

This "removal period" starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the Board of Immigration Appeals ("BIA") was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and, in addition, if a circuit court orders a stay of the removal, then it is the date of the court's final order as to that removal, or (c) if the alien is detained or confined (except under an immigration process),

then it is the date when the alien is released from confinement. *See* 8 U.S.C. § 1231(a)(1)(B).

Importantly, if – during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien – the alien is subjected to a qualifying superseding event, such superseding event starts the alien's "removal period" anew: each time a superseding events occurs. *See* 8 U.S.C. § 1231(a)(1)(B). As one court explained,

> [there cannot] be only one removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE's] authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

*Michel v. INS*, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); *accord Morena v. Gonzales*, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); *Atkinson v. INS*, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); *Marcelus v. INS*, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002).

Moreover, even after the 90-day "removal period," the government may further detain the alien, under 8 U.S.C. § 1231(a)(6), for a "certain" period of time. Specifically, recognizing that some countries might never agree – or be able – to accept their citizens

awaiting to be removed there from the United States and, thus, these detainees might end up being detained "indefinitely" (*i.e.*, effectively spending the remainder of their lives in confinement awaiting their never-materializing removal), the Supreme Court held that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. at 689. Being mindful that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "*presumptively* reasonable period of detention." *Id.* at 700-01 (emphasis supplied). Yet, after establishing this presumptively reasonable period of detention, the Supreme Court stressed, in unambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

In addition, since no language in *Zadvydas* excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(C), an alien who, during his/her presumptive *Zadvydas*-based period, takes actions delaying his/her removal (e.g., by refusing to cooperate with the ICE's removal efforts), cannot demand his/her release upon expiration of these six months. *See, e.g.*, *Wang v. Carbone*, No. 05-2386, 2005 U.S. Dist. LEXIS 24499 (D.N.J. Oct. 17, 2005) (calculating the presumptive period excluding the period of non-cooperation and relying on *Riley v. Greene*, 149 F. Supp. 2d 1256, 1262

(D. Colo. 2001), and *Sango-Dema v. District Director*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000)). Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in *Zadvydas*, thus causing a quasi-tolling mimicking, in its operation, the tolling articulated in § 1231(a)(1)(C).

Consequently, an alien held in ICE custody during his/her "removal period" might have a viable *Zadvydas* claim if, and only if: (a) (s)he asserts facts showing that his/her order of removal has become final (*i.e.*, that the BIA affirmed the immigration judge's decision or the time to appeal expired, or (s)he was released from her penal confinement already after such affirmance/expiration) more than six months ago; and (b) (s)he asserts facts showing no significant likelihood of his/her removal to the country of his/her origin in the reasonably foreseeable future, regardless of the alien's full good-faith cooperation with the ICE's efforts to have him/her removed.

### B. The Petition Merits No Habeas Relief

Here, the Petition indicates that Petitioner was paroled from his penal confinement into the ICE custody either on October 26, 2012, or November 6, 2012. (Pet. 2-3.) Construing these incoherent facts most favorably to Petitioner, the Court may presume that: (a) Petitioner was ordered removed by his immigration judge prior to his release from penal confinement; (b) that release took place on October 26, 2012; and (c) Petitioners appeal to the BIA was either denied (or his time to appeal expired) prior to said release. So construed, the Petition could be read as asserting that Petitioner's "removal period" was triggered on October 26, 2012.[2]

---

[2] If the Court were to construe the Petition as suggesting that Petitioner was released from his penal confinement into the ICE custody on November 6, 2012, his "removal period" would be triggered on that date and, hence, would be shorter than had it been calculated from October 26, 2012. Alternatively, if the Court were to presume that Petitioner was released from his penal confinement into the ICE custody

Although Petitioner's mandatory 90-day period of detention expired on January 25, 2013, his *Zadvydas*-based presumptive period of detention is still running and will expire only on April 25, 2013. Therefore, if: (a) Petitioner is not removed to his native China by April 25, 2013; (b) he has been cooperating with the immigration officials in their efforts to remove him to his country of origin; and (c) he is aware of specific facts suggesting that that there is no significant likelihood of his removal to China in the reasonably foreseeable future and these facts are such that they shift the burden on the government, Petitioner may file another Section 2241 petition seeking habeas relief under *Zadvydas* after April 25, 2013.[3] As of now, however, his Petition is premature, and his claims shall be dismissed as unripe.

### III.   Conclusion

For the foregoing reasons, the Petition will be dismissed, without prejudice, as premature. An appropriate Order accompanies this Opinion.

**Michael A. Shipp**
United States District Judge

Dated:

---

pursuant to a detainer (rather than an order of removal), and Petitioner's immigration judge ordered him removed after October 26, 2012, and Petitioner's order of removal finalized (be it by the BIA affirmance or expiration of Petitioner's period to appeal), his "removal period" would also be shorter than had it been calculated starting from October 26, 2012: it would start only from the date of such affirmance or from expiration of time to appeal. In sum, under the facts asserted by Petitioner, the most favorable-to-Petitioner beginning date of his "removal period" is October 26, 2012.

[3] In the event Petitioner elects to file another habeas petition, he must assert the facts supporting his claim. *See McFarland*, 512 U.S. at 856 (1994); *accord* 28 U.S.C. § 2254 Rule 2(c). Petitioner's legal conclusions cannot be asserted in lieu of his facts.